**WO**

NOT FOR PUBLICATION

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steve G. Thomas, | No. CV-10-901-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Wells Fargo Bank, N.A., *et al.* | |
| Defendants. | |

Pending before the Court is the Motion to Dismiss filed by Defendant Wells Fargo Bank, N.A. ("Wells Fargo" or "Defendant")[1] (Doc. 11) and the Motion to Amend filed by Plaintiff Steve G. Thomas ("Thomas" or "Plaintiff") (Docs. 15, 16). For the following reasons, the Court grants Defendant's Motion in part and denies it in part, and the Court grants Plaintiff leave to amend.

## BACKGROUND

The First Amended Complaint ("FAC") alleges as follows. In the summer of 2006, Thomas purchased a nearly-completed home in Phoenix, Arizona from individuals who are not parties to this lawsuit. He entered into a transaction, in which he put a certain amount of money down and financed the balance. In this transaction, Plaintiff borrowed $720,000

---

[1] Wells Fargo asserts that it also has been improperly named as a Defendant as Wells Fargo N.A. and Wells Fargo Home Mortgage.

from Wells Fargo under a first mortgage. Additionally, Thomas agreed to perform certain landscaping and other home maintenance tasks in order to receive an additional $90,000 home improvement loan from Wells Fargo. Because the property was still incomplete when purchased by Plaintiff, the parties agreed to a hold-back of either $85,000 or $90,000, which was placed in escrow with First American Title Insurance Company of Arizona ("First American"). These funds would be held in escrow for Plaintiff to receive as reimbursement upon his completion of the landscaping and other improvements. While the parties dispute the source of the hold-back, the FAC appears to allege that the escrowed money came from his second loan.[2]

Although Plaintiff was required to complete the landscaping and other improvements by a certain time in order to receive credit for the money held in escrow, the FAC is unclear as to whether Plaintiff actually completed those tasks in a timely manner. Nonetheless, when Plaintiff sought the hold-back funds from First American, he was unable to determine whether First American or Wells Fargo had the money. The FAC alleges that Wells Fargo had the escrowed money but refused to credit to Plaintiff as agreed. Rather, Wells Fargo allegedly either never funded the loan to First American or improperly took the $90,000 as a credit on the principal of the $720,000 first loan. Plaintiff alleges this was contrary to Wells Fargo's obligation to credit the $90,000 to Plaintiff directly or toward Plaintiff's payment obligations.

Plaintiff initiated this action in Maricopa County Superior Court. The FAC alleges six causes of action. Defendants subsequently removed to this Court and moved to dismiss Counts Three (Truth in Lending Act), Four (Injunction), and Six (Fraud and Misrepresentation) of the FAC. Apparently, a request for a temporary restraining order and/or preliminary injunction was filed in state court. However, because Plaintiff has not properly noticed any pending motion for a temporary restraining order or preliminary

---

[2] Defendant contends the escrowed money was actually part of the first, not the second, loan.

injunction, this Order need address only the Motion to Dismiss and the Motion to Amend.[3]

## LEGAL STANDARD

To survive dismissal for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action"; it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Contrary to Plaintiff's assertion, the question is not whether "no set of facts" could support his claim. *Id.* at 562. Rather, a complaint "must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 555) (internal citations omitted). Similarly, legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

---

[3] Local Rule of Civil Procedure 3.7(c) explains the procedure for noticing a district court of motions that were pending in state court prior to removal:

> If a motion is pending and undecided in the state court at the time of removal, the Court need not consider the motion unless and until a party files and serves a notice of pending motion. The notice must: (1) identify the motion by the title that appears in its caption; (2) identify any responsive or reply memoranda filed in connection with the motion, along with any related papers, such as separately filed affidavits or statements of fact; and (3) state whether briefing on the motion is complete, and, if not, it must identify the memoranda or other papers yet to be filed.

**DISCUSSION**

**I. Count Three for Violation of the Truth in Lending Act ("TILA") Is Dismissed.**

TILA and its accompanying regulations require various disclosures in lending agreements. *See* 15 U.S.C. §§ 1601, *et seq.*; 12 C.F.R. pt. 226. Plaintiff's TILA claim appears to be based on Wells Fargo's disclosure of the amount of the first loan. Specifically, the FAC seems to allege that Wells Fargo made its TILA disclosures based on an incorrect principal balance. Plaintiff, however, has no cognizable remedy as both the damages and rescission claims are barred.

**A. The Statute of Limitations Bars Damages Claims Under TILA.**

With respect to damages claims, TILA requires that a Plaintiff bring an action "within one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e). In general "the limitations period ... runs from the date of consummation of the transaction." *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986), *cert denied*, 484 U.S. 802 (1987). The FAC alleges that Plaintiff purchased the property in the summer of 2006, meaning his TILA claim expired sometime in the summer of 2007. Plaintiff, however, did not file his original complaint until March 19, 2010—well over three years after Plaintiff entered the loan agreement. Thus, Plaintiff's TILA damages claims are barred absent an exclusion.

While Plaintiff correctly notes that the one-year limitations period "does not bar a person from asserting a violation of [TILA] in an action to collect the debt which was brought more than one year from the date of the occurrence of the violation as a matter of defense by recoupment or set-off in such action," 15 U.S.C. § 1640(e), Plaintiff's argument is inapposite because nonjudicial foreclosure is not "an action to collect the debt" within the meaning of Section 1640(e). *Ortiz v. Accredited Home Lenders, Inc.*, 639 F. Supp.2d 1159, 1165 (S.D. Cal. 2009) (holding that "non-judicial foreclosures are not 'actions' as contemplated by TILA" because "actions" refer to judicial proceedings). As the Southern District of California recently explained, where a plaintiff does not allege that the defendant "has sought judicial enforcement of its efforts to foreclose," then dismissal of any recoupment claim is proper because the defendant "has not brought any judicial 'action to

collect a debt.'" *Horton v. Cal. Credit Corp.*, 2009 WL 2488031, at *11 (S.D. Cal. Aug. 13, 2009) (citing *Amaro v. Option One Mortgage Corp.*, 2009 WL 103302, at *3 (C.D. Cal. Jan 14, 2009) ("A party may bring a claim for recoupment after TILA's one-year statute of limitations period has expired, but only as a defense in an action to collect a debt. . . . . Here, Plaintiff's affirmative use of the claim is improper and exceeds the scope of the TILA exception, permitting recoupment as a defensive claim only."). As the FAC fails to allege that Defendant took any judicial action to collect a debt, but instead alleges only that Defendant sought nonjudicial foreclosure of the deed of trust, no potential claim for recoupment may overcome the one-year statute of limitations.

### B. Plaintiff Has Not Alleged Facts Supporting a Right of Rescission.

In general, a borrower's "right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first[.]" 15 U.S.C. § 1635(f). Plaintiff consummated the lending transaction in the summer of 2006, but did not bring his TILA claim until March of 2010, which is outside the limitations period for rescission claims.

Plaintiff contends that the limitations period is tolled because he did not receive notice of his three-day right to rescind. Plaintiff, however, points to no part of the FAC alleging that Defendant failed to give notice of the right to rescind.[4] And to the extent Plaintiff argues that equitable tolling based on fraudulent concealment extends the limitations period for his TILA claim, "a plaintiff's complaint must meet the particularity pleading requirements of Federal Rule of Civil Procedure 9(b)." *Stejic v. Aurora Loan Servs., LLC*, 2009 WL 4730374, at *4 (D. Ariz. Dec. 1, 2009) (citing *Guerrero v. Gates*, 442 F.3d 697, 707 (9th Cir. 2006); *Wasco Prods., Inc. v. Southwall Tech., Inc.*, 435 F.3d 989, 991–92 (9th Cir. 2006); *389*

---

[4] To the extent Plaintiff raises a similar argument in response to TILA's one-year limitations period for damages claims, this argument likewise fails. Plaintiff argues only that the limitations period for *rescission* claims may be extended under 15 U.S.C. § 1635(f), but makes no argument regarding the limitations period for TILA *damages* claims under Section 1640(e).

*Orange St. Partners v. Arnold*, 179 F.3d 656, 662–63 (9th Cir. 1999)).

Plaintiff further argues that he may "always rescind if the lender starts foreclosure proceedings and there is a TILA violation pled in defense to that action." (Doc. 15 at 5). Plaintiff cites no binding authority for this proposition. To the extent Plaintiff alludes to 15 U.S.C. § 1635(i), which provides for the right of rescission after a lender initiates judicial or nonjudicial foreclosure proceedings, Plaintiff's argument cannot overcome the three-year limitations period for rescission claims. By its plain terms, Section 1635(i) makes the right of rescission upon the initiation of foreclosure proceedings "subject to the time period provided in [Section 1635(f)]." *Id.* § 1635(i). Therefore, because Section 1635(i) references Section 1635(f)'s requirement that rescission claims be brought within three years, Plaintiff's argument to the contrary is inapposite.

Even if Plaintiff's rescission claim had been timely, the claim would still fail because the remedy of rescission is unavailable for purchase money loans. *See* 15 U.S.C. § 1635(e)(1) (providing that the TILA rescission section "does not apply to . . . a residential mortgage transaction"); 15 U.S.C. § 1602(w) (defining "residential mortgage transaction" as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"); *see also In re Schweizer*, 354 B.R. 272, 280 (Bankr. D. Idaho 2006) ("The right of rescission does not apply to residential mortgage transactions . . . It is clear that the Congress did not intend the rescission obligation (or disclosure of it) to extend to a loan whose predominant purpose is to enable the borrower to acquire or erect, on her property, a new residential structure."). This case appears to involve a residential mortgage transaction, as the FAC alleges that "plaintiff purchased the property as his primary residence . . . in a transaction wherein he put down certain monies and financed the balance" with a "new first mortgage (note and deed of trust from defendant Wells Fargo) for $720,000." (Doc. 1, Ex. 1 at 3). Plaintiff's Response offers no argument to the contrary, and the Court,

therefore, dismisses any claim for rescission under TILA.[5]

Under TILA, "disclosure of the finance charge and other disclosures affected by any finance charge . . . shall be treated as being accurate . . . if the amount disclosed as the finance charge . . . is greater than the amount required to be disclosed." 15 U.S.C. § 1605(f)(1)(B); *see also* 12 C.F.R. § 226.18 ("In a transaction secured by real property or a dwelling, the disclosed finance charge and other disclosures affected by the disclosed finance charge (including the amount financed and the annual percentage rate) shall be treated as accurate if the amount disclosed as the finance charge . . . [i]s greater than the amount required to be disclosed."). In other words, a TILA violation does not occur solely because of a representation that a loan amount is higher than the actual value of the loan. The FAC, however, appears to allege exactly that—that Wells Fargo disclosed a loan amount that was higher than the actual loan amount. The FAC alleges that Wells Fargo improperly applied $90,000 to the payment of the principal on a $720,000 loan and that "what was to be from Wells Fargo a[] . . . loan of $720,000, was in fact only a $630,000 loan, being paid." (Doc. 1, Ex. 1 at 9). Because the FAC seems to base Plaintiff's claim on an overstatement of a loan amount, Plaintiff's TILA claim fails.

Plaintiff's Response explains an alternative theory of liability, contending that Wells Fargo disclosed a loan amount that was *lower* than the actual value of the loan. Plaintiff's theory seems to be that Plaintiff was required to perform the home improvements, under the

---

[5] While not essential to dismissal of Plaintiff's claims, the Court also notes that, under TILA, "disclosure of the finance charge and other disclosures affected by any finance charge . . . shall be treated as being accurate . . . if the amount disclosed as the finance charge . . . is greater than the amount required to be disclosed." 15 U.S.C. § 1605(f)(1)(B); *see also* 12 C.F.R. § 226.18 ("In a transaction secured by real property or a dwelling, the disclosed finance charge and other disclosures affected by the disclosed finance charge (including the amount financed and the annual percentage rate) shall be treated as accurate if the amount disclosed as the finance charge . . . [i]s greater than the amount required to be disclosed."). The FAC pleads that "what was to be from Wells Fargo a[] . . . loan of $720,000, was in fact only a $630,000 loan, being paid." (Doc. 1, Ex. 1 at 9). To the extent this allegation indicates that Plaintiff's TILA claim is based on a representation that the finance charges were higher than they actually were, Plaintiff's claim fails.

impression that he would receive $85,000 (or $90,000) in exchange, but that Wells Fargo never intended to fund that amount. Plaintiff further explains that this somehow caused his actual loan amount to exceed $720,000. To the extent these facts may give rise to a claim, Plaintiff's post hoc explanation does not cure the FAC's deficiencies. To the contrary, Plaintiff's assertion that Wells Fargo disclosed a loan amount that was lower than the actual amount due contradicts the plain language of the FAC, which asserts that "what was to be from Wells Fargo a[] . . . loan of $720,000, was in fact only a $630,000 loan, being paid." (Doc. 1, Ex. 1 at 9). And to the extent Plaintiff argues that other disclosures were not made, these facts are not alleged coherently in compliance with *Twombly*, 550 U.S. at 556, and *Iqbal*, 129 S. Ct. at 1949.

Plaintiff further contends in his Response that he never received notice of his three-day right to rescind. The FAC, however, never alleges that Defendant failed to give this notice. And even if Plaintiff had alleged such facts, Plaintiff cites no authority holding that the failure to provide notice of the three-day right to rescind somehow creates a cause of action based on the overstatement of a loan amount.

**II.     Count Four Is Dismissed to the Extent Pled as a Separate Cause of Action.**

Count Four of the FAC seeks injunctive and declaratory relief based on its other claims. The parties appear to agree that "[i]njunctions and declaratory judgments are remedies for underlying causes of action, but . . . not separate causes of action." *Silvas v. GMAC Mortgage, LLC*, 2009 WL 4573234, at *6 (D. Ariz. Dec. 1, 2009) (citing *City of Tucson v. Clear Channel Outdoor, Inc.*, 218 Ariz. 172, 187, 181 P.3d 219, 234 (Ct. App. 2008); *McMann v. City of Tucson*, 202 Ariz. 468, 473, 47 P.3d 672, 678 (Ct. App. 2002)). Accordingly, Count 4 is dismissed to the extent it was pled as a separate cause of action. Plaintiff, however, may seek injunctive and declaratory relief if available as a remedy for its other causes of action.

**III.    Count Six for Fraud and Misrepresentation Was Adequately Pled.**

An action for fraud requires Plaintiff to allege that Defendant made "a false and material representation, with knowledge of its falsity or ignorance of its truth, with intent that

- 8 -

the hearer would act upon the representation in a reasonably contemplated manner, and that the hearer, ignorant of the falsity of the representation, rightfully relied upon the representation and was thereby damaged." *Dawson v. Withycombe*, 216 Ariz. 84, 96, 163 P.3d 1034, 1046 (Ct. App. 2007). In the context of promises made in contemplation of a future contract, Defendants, citing cases interpreting New York law, argue that a breach of contract claim alone cannot be converted into a fraud claim. *See Hargrave v. Oki Nursury, Inc.*, 636 F.2d 897, 898–99 (2d Cir. 1980) ("If the only interest at stake is that of holding the defendant to a promise, the courts have said that the plaintiff may not transmogrify the contract claim into one for tort."); *Blank v. Baronowski*, 959 F. Supp. 172, 180 (S.D. N.Y. 1997) ("An action for breach of contract may not be converted into one for fraud merely by alleging that the contracting party never intended to meet his [or her] contractual obligation . . . ."). Defendants, however, fail to cite any Arizona law so strictly defining fraud. To be sure, Arizona courts, like New York courts, recognize that "[a] breach of contract is not fraud." *Spudnuts, Inc. v. Lane*, 131 Ariz. 424, 426, 641 P.2d 912, 914 (Ct. App. 1982) (citing *Trollope v. Koerner*, 106 Ariz. 10, 19, 470 P.2d 91, 100 (1970)). Nonetheless, "'[u]nfulfilled promises may form the basis for actionable fraud where made with the present intention not to perform.'" *Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 77, 985 P.2d 556, 562 (Ct. App. 2007) (quoting *Sun Lodge, Inc. v. Ramada Dev. Co.*, 124 Ariz. 540, 542, 606 P.2d 30, 32 (Ct. App. 1979)).

In addition to the general elements of fraud, Federal Rule of Civil Procedure 9(b) further requires the complaint to "state with particularity the circumstances constituting fraud or mistake." In other words, the complaint "must set forth *more* than the neutral facts necessary to identify the transaction. The plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotations omitted); *see also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (requiring that a complaint allege the "who, what, when, where, and how of the misconduct alleged"). Although the circumstances surrounding the fraud must be pled with particularity, "[m]alice, intent, knowledge, and other conditions of a

person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

Here, Plaintiff has adequately alleged fraud. Fairly reading the FAC, Plaintiff's fraud claim appears to be based on Wells Fargo's alleged representation in the summer of 2006 that it would make a $90,000 loan for improvements to the property, that it would fund the $90,000 loan to American Title in escrow, and that it would use the $90,000 to reimburse Plaintiff after he completed the improvements. According to Plaintiff, Defendant did not follow through with these promises. Instead, after Plaintiff allegedly completed the improvements to the property, Defendant did not reimburse Plaintiff with the $90,000 that was to be put in escrow. Rather than complying with its representations, Wells Fargo allegedly either failed to fund anything into escrow or used the money as a payment against the first loan's principal, rather than using the funds to cancel payments due on the second loan and thus reducing Plaintiff's overall payment. Not only does Plaintiff allege the specific circumstances surrounding Wells Fargo's representations and failure to comply with those representations, but Plaintiff also alleges that Wells Fargo "knew at the time of purchase that it would not reimburse plaintiff for and/or that it would fail to fund despite the agreement to do so, and despite instructing plaintiff to do the improvements required in the loan contract[,]" and that Wells Fargo made the statements with the intent that Plaintiff rely on them. (Doc. 1, Ex. 1 at 7, 14); *see also* Fed. R. Civ. P. 9(b) (explaining that intent may be alleged generally).

### IV. The Court Grants Leave to Amend

Plaintiff has requested that any dismissal be with leave to amend. Federal Rule of Civil Procedure 15(a) declares that leave to amend a complaint "shall be freely given when justice so requires." "Rule 15's policy of favoring amendments to pleadings should be applied with extreme liberality." *Eldridge v. Block*, 832 F.2d 1132, 1135 (9th Cir. 1987) (internal quotation omitted). In the Ninth Circuit, "a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action" unless it is "absolutely clear" that the litigant could not cure the defects. *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976

(9th Cir. 2002) ("We are very cautious in approving a district court's decision to deny pro se litigants leave to amend."); *Waters v. Young*, 100 F.3d 1437, 1441 (9th Cir. 1996) ("As a general matter, this court has long sought to ensure that pro se litigants do not unwittingly fall victim to procedural requirements that they may, with some assistance from the court, be able to satisfy."). While the Court dismisses Claims Three and Four, Plaintiff's Response suggests that some factual basis for those claims may exist. Accordingly, in an abundance of caution, the Court grants the Motion to Amend.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Dismiss (Doc. 11) is **GRANTED-IN-PART** and **DENIED-IN-PART**. Counts Three and Four of the FAC are dismissed with leave to amend.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend is **GRANTED**. Plaintiff shall **file a second amended complaint** on or before **September 27, 2010**.

DATED this 26th day of August, 2010.

_____
G. Murray Snow
United States District Judge