**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steve G. Thomas, | No. CV-10-901-PHX-GMS |
| Plaintiff, | **ORDER** |
| vs. | |
| Wells Fargo Bank, National Association dba Wells Fargo Home Mortgage, et al., | |
| Defendants. | |

Pending before the Court are Defendant Wells Fargo Bank, N.A.'s Motion for Summary Judgment (Doc. 68) and Plaintiff's Motion for Partial Summary Judgment (Doc. 71). Wells Fargo's summary judgment motion is granted in part and denied in part. Plaintiff's summary judgment motion is denied.

## BACKGROUND

In September 2006, Plaintiff Steve G. Thomas purchased a home at 3644 East Maffeo Road, Phoenix, Arizona (the "Property") for $900,000. Plaintiff financed the purchase with loans from Defendant Wells Fargo Bank, N.A. through an arrangement called an "80-10-10." (Doc. 69-1, Ex. 1 at ¶ 5). Through the 80-10-10 arrangement, 80 percent of the purchase price was financed by Wells Fargo through a purchase money first mortgage loan, 10 percent was financed by Wells Fargo through a purchase money second mortgage loan, and Plaintiff paid the remaining 10 percent of the purchase price. (*Id.*). In other words, Plaintiff borrowed

1  $720,00 through the first mortgage loan and $90,000 through the second mortgage loan, for
2  a total of $810,000 in borrowed funds. Plaintiff then paid the remaining $90,000 of the
3  purchase price, plus $14,983 in closing costs. (Doc. 69-1, Ex. 1-G at lines 103, 201, 202, 205,
4  303, 506).

5  Plaintiff's $720,000 first mortgage loan provided for a 30-year term of repayment at
6  a fixed rate of interest. (Doc. 69, ¶ 7; Doc. 86, ¶ 7). For the first ten years, Plaintiff's
7  payments were interest only; thereafter, he was required to pay both principal and interest,
8  amortized over the remaining 20-year period. (*Id*.). In connection with the first mortgage
9  loan, Plaintiff signed a promissory note and a deed of trust. (Doc. 71, Exs. B, C). The
10 promissory note states that Plaintiff has "the right to make payments of Principal at any time
11 before they are due" and that upon making such a prepayment Plaintiff "will tell the Note
12 Holder in writing that [he is] doing so." (Doc. 71, Ex. B). The deed of trust lays out an order
13 of priority under which Plaintiff's payments are to be applied to his loans:

> [A]ll payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

(Doc. 71, Ex. C).

When Plaintiff purchased the Property it was new, and various improvements, including landscaping, decking, and installation of a barbeque grill and firepit, had not yet been completed. Plaintiff wished to make such improvements himself rather than have the seller make them. Wells Fargo and Plaintiff therefore agreed to place $85,000 of the first mortgage loan[1] into an escrow account with Defendant First American Title. (Doc. 69-1, Ex.

---

[1] Wells Fargo has produced an affidavit of Jeff Borden, Plaintiff's Home Mortgage Consultant, which states that the $85,000 was withheld from Plaintiff's first loan. (Doc. 69-1, Ex. 1 at ¶ 7). Plaintiff contends that the *second* mortgage loan was the source of the $85,000. (Doc. 1). Plaintiff has not produced any evidence, however, that this is the case. The top left corner of the Escrow Agreement bears the numbers "12061." (Doc. 69-1, Ex. 1-K). These

1 at ¶ 12, Ex. 1-G at line 506, Ex. 1-K). Although the $85,000 was never given directly to Plaintiff, under the terms of this Escrow Agreement the $85,000 was loaned to Plaintiff in September along with the funds used to purchase the Property, and then immediately deposited with First American. (Doc. 69-1, Ex. 1-K at 000138). Although Plaintiff seems to have immediately started paying interest on the $85,000, (*See* Doc. 69-3, Ex. 6 at 000234), his access to these funds was limited by the Escrow Agreement (*See* Doc. 69-1, Ex. 1-K).

The Escrow Agreement lists four interested parties: 1) the Lender, Wells Fargo; 2) the Mortgagor; 3) the Closing Agent, First American Title; and 4) the "responsible party"—the party responsible for making the improvements. (*Id.*). The agreement does not explicitly identify this "responsible party," but the parties agree that the party responsible for making the improvements was the Mortgagor, Plaintiff Steve Thomas. (Doc. 69, ¶ 18; Doc. 72, ¶ 4). In other words, under the Escrow Agreement, Plaintiff has the rights and responsibilities of both the Mortgagor and the "responsible party." Under the terms of the Escrow Agreement, First American was to release the $85,000 to Plaintiff once he had completed the improvements "to [Wells Fargo's] satisfaction and in accordance with any plans and specifications for the work." (Doc. 69-1, Ex. 1-K at ¶ 2.a). The Escrow Agreement further states that Plaintiff was to complete the improvements "on or before 12/4/06, or such later date as may be approved by the Lender," and that Plaintiff "must notify the Lender upon completion of the work." (*Id.*).

In the event Plaintiff did not satisfactorily complete the improvements by the date specified or by later Lender-approved deadlines, the Escrow Agreement contemplates two possible remedies. First, "the Lender is authorized to enter into a contract with any third party for the completion of the work. The Closing Agent will pay the third party from the escrowed funds. The remainder, if any, will be released to [Plaintiff]." (Doc. 69-1, Ex. 1-K at ¶ 3.b). Second, where "the cost to [complete the improvements] is substantially more than the

---

are the last five digits of Plaintiff's first mortgage loan. (*See* Doc. 69-3, Ex. 6; Doc. 69-1, Ex. 1-B at 000024).

- 3 -

1    amount escrowed . . . the Lender, at its discretion, may cause the release of the escrowed
2    funds to [Plaintiff]." (*Id*. at ¶ 3.d).

3    Plaintiff did not complete the improvements by December 4, 2006. (*See* Doc. 69-1,
4    Ex. 1-K). Wells Fargo granted Plaintiff a 60-day extension and three additional 30-day
5    extensions to complete the improvements. (Doc. 69, ¶ 24; Doc. 86, ¶ 24). The last extension
6    expired on May 7, 2007 without Plaintiff having completed all of the improvements.[2] (Doc.
7    69-1, Ex. 1 at ¶ 15). On June 5, 2007, Wells Fargo requested via email that First American
8    send the escrowed funds to Wells Fargo "for principal reduction" on Plaintiff's loan. (Doc.
9    69-2, Ex. 4-18).That same day, a First American representative replied that she would send
10   the funds "as soon as possible," but asked "[h]as Mr. Thomas been notified that the funds are
11   being requested to be sent to you!!![?]" (*Id*.). Wells Fargo responded that "Mr. Jeff Borden
12   [Plaintiff's] Home Mortgage Consultant spoke with him and made him aware of what we are
13   doing." (*Id*.). First American forwarded the $85,000 to Wells Fargo, and on June 14, 2007,
14   Wells Fargo credited the funds to the principal of Plaintiff's purchase money first mortgage
15   loan.[3]

16   In October 2009, Plaintiff stopped making payments on his loans. (Doc. 69-3, Ex. 6
17   at 000236). In January 2010, Wells Fargo declared Plaintiff in default and noticed a trustee's
18   sale on the property. On June 30, 2010, the Property was sold at a public auction. (Doc. 69-3,

---

[2] Plaintiff contends that by June 2007 he had completed most of the agreed-upon improvements. (Doc. 86, ¶ 25). The Court has ordered, however, that "[a]s a sanction, Plaintiff will be unable to offer testimony or evidence as to the improvements he made upon the property, except those specific improvements as are identified in Exhibit M attached to Defendant's Motion (Doc. 50)." (Doc. 59 at 1). To the extent Plaintiff wishes to argue at trial that he completed a portion of the improvements, he will therefore be limited to those improvements which he identified in Doc. 50, Exhibit M.

[3] The $85,000 credit reduced Plaintiff's principal balance on that loan from $717,677 to $632,677. (Doc. 69, ¶ 28; Doc. 86, ¶ 28). Accordingly, Plaintiff's biweekly interest payment was reduced from $2,316 to $2,080. (*Id*.). This biweekly payment was deducted from Plaintiff's bank account via automatic withdrawal and Plaintiff claims that he was not aware that his principal and payments had been reduced until months after the reduction. (Doc. 72 at ¶¶ 13–14).

- 4 -

1 Ex. 7).

2 On March 23, 2010, Plaintiff filed the instant action in Maricopa County Superior Court, bringing a breach of contract claim against First American and four claims against Wells Fargo. (Doc. 1-1, Ex. A). Plaintiff's claims against Wells Fargo were for breach of contract, violation of the covenant of good faith and fair dealing, violation of the truth in lending law, and fraud.[4] On April 23, 2010, the action was removed to this Court. (Doc. 1). On August 26, 2010, the Court dismissed Plaintiff's truth in lending claim. (Doc. 18). Wells Fargo now moves for summary judgment against Plaintiff on his remaining three claims. (Doc. 68). Plaintiff, meanwhile, moves for summary judgment against Wells Fargo on his breach of contract claim. (Doc. 71).

**DISCUSSION**

**I.     Legal Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "'can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party.*'" *Cal. Architectural Bldg. Prods., Inc. v. Franciscan*

---

[4] Plaintiff also attempted to bring a cause of action for an injunction against the trustee's sale. (Doc. 1-1, Ex. A). As the Court held, however, in its August 26, 2010 Order, injunctions are remedies for underlying causes of action and not separate causes of action. (Doc. 18 at 8). The Court accordingly dismissed this claim to the extent it was pled as a separate cause of action. (*Id.*).

- 5 -

*Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250) (emphasis in original).

**II.     Legal Analysis**

    **A.     Wells Fargo's Motion for Summary Judgment**

Plaintiff has outstanding claims against Wells Fargo for 1) breach of contract, 2) violation of the covenant of good faith and fair dealing, and 3) fraud and misrepresentation. Wells Fargo seeks summary judgment against Plaintiff on all three claims. The Court will address each claim in turn.

        **1.     Breach of Contract**

In its Complaint, Plaintiff claims that Wells Fargo breached the terms of the loan agreement by requesting the $85,000 in escrowed funds from First American and applying those funds to the principal of Plaintiff's first mortgage loan. (Doc. 1, Ex. A). A valid claim for breach of contract requires "the existence of a contract, breach of the contract, and resulting damages." *Chartone, Inc. v. Bernini*, 207 Ariz. 162, 170, 83 P.3d 1103, 1111 (App. 2004) (citing *Thunderbird Metallurgical, Inc. v. Ariz. Testing Lab.*, 5 Ariz. App. 48, 423 P.2d 124 (1967)).

Wells Fargo contends that Plaintiff has failed to provide any evidence that Wells Fargo breached the notes, deeds of trust, or Escrow Agreement that make up the contract between them. (Doc. 68 at 6). Wells Fargo does not dispute that it requested the escrowed funds from First American and applied them to principal. Wells Fargo nonetheless contends that it is entitled to summary judgment against Plaintiff on this claim because the Escrow Agreement "did not require Wells Fargo to tender the escrowed funds to Plaintiff unless and until the improvements were completed to Wells Fargo's satisfaction." (Doc. 68 at 7).

To be sure, the Escrow Agreement stated that Plaintiff was to complete the improvements by December 4, 2006, or by "such later date as may be approved by [Wells Fargo]." (Doc. 69-1, Ex. 1-K at ¶ 2.a). Plaintiff failed to do so. (Doc. 16 at 9 n.4). The terms of the Escrow Agreement do not, however, authorize Wells Fargo to apply the escrowed funds back to principal upon such failure. To the contrary, the Escrow Agreement states that

- 6 -

1 "[i]f the Lender determines that [Plaintiff] has failed to complete satisfactorily all or any part of the [improvements] by the date specified . . . the Lender is authorized to enter into a contract with any third party for the completion of the work. [First American] will pay the third party from the escrowed funds. The remainder, if any, will be released to [Plaintiff]." (Doc. 69-1, Ex. 1-K at ¶ 3.b). The only other remedy contemplated by the Agreement is for Wells Fargo to "cause the release" of the escrowed funds to Plaintiff. (*See id*. at ¶¶ 3.c–3.d).

In short, Wells Fargo has failed to establish that the terms of the Escrow Agreement permitted Wells Fargo to apply the $85,000 back to the principal of Plaintiff's loan. Wells Fargo is not, therefore, entitled to summary judgment against Plaintiff on the breach of contract claim.

### 2.  **Breach of Covenant of Good Faith and Fair Dealing**

Plaintiff has also brought a tort claim against Wells Fargo for breach of the covenant of good faith and fair dealing. (Doc. 1, ¶¶ 31–36). There is a covenant of good faith and fair dealing inherent in every contract which requires that "neither party [ ] act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship." *Rawlings v. Apodaca*, 151 Ariz. 149, 153–54, 726 P.2d 565, 569–70 (1986). *Rawlings v. Apodaca* is a case in which the Arizona Supreme Court dealt with the covenant of good faith in the context of an insurance contract. *Id.* In *Rawlings*, the court held that "one of the benefits that flow from [an] insurance contract is the insured's expectation that his insurance company will not wrongfully deprive him of the very security for which he bargained." *Id.* at 155. "Conduct by the insurer which does destroy the security . . . breaches the implied covenant of good faith and fair dealing implied in the contract." *Id*.

"[T]ort recovery for breach of the implied covenant is well established in actions brought on insurance contracts but only reluctantly extended to other relationships." 151 Ariz. at 158. Nonetheless, tort recovery is permitted in the context of a non-insurance contract "where the contract creates a relationship in which the law implies special duties not imposed on other contractual relationships. These relationships are characterized by elements of public interest, adhesion, and fiduciary responsibility." *Id.* (internal quotation omitted).

1  In other words, Arizona permits the use of tort claims for breach of the implied covenant not
2  only in insurance contracts, but in all contracts in which the contracting parties have some
3  special relationship, such as one that is fiduciary in nature. *See id. See also Flores v. ADT*
4  *Sec. Services, Inc.*, 2010 WL 6389598, at *4 (D. Ariz. June 28, 2010) ("[A] fiduciary type
5  duty . . . permits an aggrieved plaintiff to bring an action in tort for breach of the duty of
6  good faith.")

7  Typically, a lender-borrower relationship is not fiduciary in nature. *See, e.g.*,
8  *McAlister v. Citibank (Arizona), a Subsidiary of Citicorp*, 171 Ariz. 207, 212–13, 829 P.2d
9  1253, 1258–59 (App. 1992) (holding that the fact that a borrower was a long-time customer
10 of a lender did not, without more, create a fiduciary relationship between the two sufficient
11 to invoke the implied covenant of good faith); *Urias v. PCS Health Sys.*, 211 Ariz. 81, 118
12 P.3d 29 (App. 2005) (holding that a debtor/creditor relationship did not create a fiduciary
13 duty); *Valley Natl. Bank of Phoenix v. Elect. Dist. No. 4*, 90 Ariz. 306, 316, 367 P.2d 655,
14 662 (1961) ("[T]he relationship between a Bank and an ordinary depositor, *absent any*
15 *special agreement*, is that of debtor and creditor.") (emphasis added). In the instant case,
16 however, the Escrow Agreement to which Wells Fargo and Plaintiff were both parties created
17 a fiduciary type relationship between them regarding the escrowed funds. *See Sveback v.*
18 *Clayton Homes, Inc.,* 2012 WL 465417, at *4 (Ariz. App. February 14, 2012) ("An express
19 agency relationship is created by an express agreement between the principal and agent.*")*

20 The Escrow Agreement states that "[t]his Agreement is made to . . . cause the Lender
21 to disburse the mortgage loan to [Plaintiff] prior to the actual completion of the repairs."
22 (Doc. 69-1, Ex. 1-K at ¶ 2.a). In other words, under the agreement, Wells Fargo disbursed
23 the entire loan proceeds to Plaintiff, including the $85,000 for improvements. Under the
24 terms of the agreement, however, Plaintiff then "deposited with [First American] . . .
25 $85,000" of the proceeds and authorized the Lender to obtain access to the funds and to use
26 them in certain ways should Plaintiff not satisfactorily complete the promised improvements.
27 (Doc. 69-1, Ex. 1-K at ¶¶ 2.a, 3.b, 3.d). For instance, Plaintiff agreed that if he failed to
28 complete the improvements, Wells Fargo was "authorized to enter into a contract with any

- 8 -

1 third party for the completion of the work" and to have First American pay the third party
2 "from the escrowed funds." (*Id.* at ¶ 3.b). Plaintiff further agreed that if the improvements
3 cost substantially more than the amount escrowed, Wells Fargo was authorized, at its
4 discretion, to have First American release the entire $85,000 to Plaintiff, thereby "caus[ing]
5 the automatic termination of the Agreement." (*Id.* at ¶ 3.d).

6 Wells Fargo calls the $85,000 a "holdback." Given, however, that these funds had
7 already been loaned to Plaintiff—who was apparently paying interest on them while they sat
8 in escrow—these funds were not held back from the loan transaction by Wells Fargo. Rather,
9 the funds were given to Plaintiff, who then placed them in escrow and gave Wells Fargo the
10 authorization to manage them for a particular purpose, namely the hiring of a third party to
11 complete the improvement should Plaintiff fail to complete the improvements himself. The
12 authorization Plaintiff gave Wells Fargo to use his $85,000 for a particular purpose created
13 a fiduciary type relationship between Plaintiff and Wells Fargo. *See cf.* Black's Law
14 Dictionary (9th ed. 2009) (defining a "fiduciary" as "[o]ne who must exercise a high standard
15 of care in managing another's money or property").

16 This fiduciary type relationship creates tort liability for Wells Fargo if it breached the
17 Escrow Agreement's implied covenant of good faith and fair dealing. *See Rawlings,* 151
18 Ariz. at 159; *Flores*, 2010 WL 6389598, at *4. Plaintiff claims that Wells Fargo breached
19 this covenant by a) failing to inform Plaintiff upon his failure to complete the improvements
20 that the escrowed funds were being applied to principal, b) suborning Plaintiff to expend
21 monies on improvements to the property which it knew it would not reimburse him for,
22 thereby enhancing its security in the loan, c) altering its underwriting requirements relating
23 to the funding of Plaintiff's second mortgage loan, and d) changing Plaintiff's interest only
24 loan into a principal reducing loan.

25 Plaintiff has not produced evidence that Wells Fargo knew it would not reimburse him
26 for any improvements he made, altered its underwriting requirements, or changed the
27 fundamental nature of his loan. The record does, however, contain evidence that Wells Fargo
28 failed to inform Plaintiff that the escrowed funds were being applied to principal, and that

- 9 -

1  such failure impaired Plaintiff's right to receive a portion of the escrowed funds. (*See* Doc.
2  69-2, Ex. 4-18). When Wells Fargo requested the escrowed funds from First American, a
3  First American representative asked "[h]as Mr. Thomas been notified that the funds are being
4  requested to be sent to you!!![?]" (*Id*.). A Wells Fargo representative responded that "Mr. Jeff
5  Borden his Home Mortgage Consultant spoke with him and made him aware of what we are
6  doing. To confirm that I just spoke with Jeff again and he stated, 'Mr. Thomas is aware that
7  we are taking the $85,000.00 and applying it to "principal reduction."'" (*Id*.). First American
8  then forwarded the funds, apparently relying on Wells Fargo's representation that Plaintiff
9  was aware of the purpose for which the funds were being used. (*See id*.).

10 Plaintiff contends, however, that neither Borden nor any other Wells Fargo
11 representative informed him that the funds were being removed from the escrow account, and
12 that he did not discover that the funds had been removed until after the fact. (Doc. 69-2, Ex.
13 4 at 96:2–97:2, 157:3–14; *see also* Doc. 72, ¶ 13; Doc. 73). Mr. Borden's affidavit does not
14 contend otherwise. (Doc. 69-1, Ex.1). Nor does Wells Fargo provide any other admissible
15 evidence showing that it contacted Plaintiff regarding its plans to apply the escrowed funds
16 to principal or that it was entitled to use Plaintiff's funds in this manner. It appears, therefore,
17 that Wells Fargo destroyed benefits to which Plaintiff was entitled under the Escrow
18 Agreement. *See Rawlings*, 151 Ariz. at 153–54 ("Conduct by the insurer which does destroy
19 the security or impair the protection purchased breaches the implied covenant of good faith
20 and fair dealing implied in the contract."). Wells Fargo is not entitled to summary judgment
21 against Plaintiff on his claim for breach of the covenant of good faith.

22 **3.  Fraud and Misrepresentation**

23 Lastly, Wells Fargo contends that it is entitled to summary judgment against Plaintiff
24 on his fraud and misrepresentation claim. "A civil claim for fraud is established by showing
25 that the tortfeasor made a false and material representation, with knowledge of its falsity or
26 ignorance of its truth, with intent that the hearer would act upon the representation in a
27 reasonably contemplated manner, and that the hearer, ignorant of the falsity of the
28 representation, rightfully relied upon the representation and was thereby damaged." *Dawson*

*v. Withycombe*, 216 Ariz. 84, 96, 163 P.2d 1034, 1046 (Ct. App. 2007). Plaintiff argues that Wells Fargo is not entitled to summary judgment because in the Court's "disposition and denial in part of Wells Fargo's motion to dismiss, the court allowed plaintiff's fraud claim to stand. Nothing new has happened since then." (Doc. 85 at 10). Motions to dismiss differ, however, from motions for summary judgment. When a defendant moves to dismiss a claim under Rule 12(b)(6), the facts alleged in the plaintiff's complaint are taken as true. At the summary judgment stage, however, "a plaintiff must set forth non-speculative evidence" of the facts alleged in its complaint which entitle it to relief. *Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011). *See also Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) ("[I]t is not our task, or that of the district court, to scour the record in search of a genuine issue of triable fact. We rely on the nonmoving party to identify with reasonable particularity the evidence that precludes summary judgment.") (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir.1995)). Plaintiff has not set forth such evidence

      To be sure, by signing the Escrow Agreement, Wells Fargo made the representation that it would abide by the Agreement's terms. But Plaintiff has produced no evidence, direct or circumstantial, that Wells Fargo made this representation with intent that Plaintiff rely on it and be deprived of his $85,000. It was only after Plaintiff's repeated failures to meet his deadlines that Wells Fargo appears to have decided to apply Plaintiff's money to the principle of his loan. (Doc. 69-1, Ex. 1 at ¶ 15). In short, Plaintiff is correct that in regards to his fraud claim "[n]othing new has happened" since this claim survived Wells Fargo's motion to dismiss; Plaintiff has not set forth evidence to support the allegations of fraud in his Complaint. Because he has not set forth evidence which would allow a reasonable jury to find that Wells Fargo committed fraud, summary judgment is granted against him on this claim.

      **B.**    **Plaintiff's Motion for Summary Judgment**

      Plaintiff, meanwhile, moves for summary judgment against Wells Fargo on his breach of contract claim. Plaintiff does not seek summary judgment for Defendants' alleged breach

1  of the Escrow Agreement. Rather, his motion "deals only with Wells Fargo's liability for
2  breach of the terms and conditions of the *first note [and] deed of trust*." (Doc. 71 at 3)
3  (emphasis added). The deed of trust states that Plaintiff's payments were to be applied to his
4  loans in the following order of priority:

5  > (a) interest due under the Note; (b) principal due under the Note;
6  > (c) amounts due under Section 3. . . . Any remaining amounts
7  > shall be applied first to late charges, second to any other
   > amounts due under this Security Instrument, and then to reduce
   > the principal balance of the Note.

8  (Doc. 71, Ex. C). Plaintiff contends that when Wells Fargo took the $85,000 from the escrow
9  account and applied these funds to his loan, these funds effectually became a payment on his
10 loan. (Doc. 71 at 6). Plaintiff further contends that because the first category listed in the
11 deed of trust's order of priority is "interest," the $85,000 "payment" should have been
12 applied to the loan's next $85,000 of interest. (*Id.*). In other words, Plaintiff argues that he
13 did not need to make any interest payments on his loan because he "was paid ahead 23
14 months." (*Id.*). The first item listed in the deed of trust's order of priority, however, is not
15 "interest," but rather "interest *due* under the Note." (Doc. 71, Ex. C). At the time the $85,000
16 was applied to Plaintiff's loan, there does not appear to have been any interest due. (*See* Doc.
17 71, Ex. D). Nor were there principal, Section 3 charges[5], or late charges due. Therefore, even
18 if the $85,000 was properly classified as a "payment," the order of priority specifies that such
19 a payment should be applied "to reduce the principal balance of the Note." (Doc. 71, Ex. C).
20 This is precisely how Wells Fargo applied the funds.

21        To be sure, the promissory note for Plaintiff's first loan states that upon making
22 prepayments of principal, Plaintiff "will tell the Note Holder in writing that [he is] doing so."
23 (Doc. 71, Ex. B). This clause does not, however, supercede or conflict with the order of
24 priority in the deed of trust. Where Plaintiff does not designate in writing that a given

---

[5] Section 3 lists various charges entitled "Escrow Items" which Plaintiff is obligated to pay Wells Fargo "on the day Periodic Payments are due." (Doc. 71, Ex. C). Charges listed as Escrow Items include "taxes and assessments," "leasehold payments," "ground rents," and insurance premiums. (Doc. 71, Ex. C).

- 12 -

payment is a prepayment of principal, this can only mean that the regular order of priority applies. (*See* Doc. 71, Ex. C). In short, even were the Court to hold that the $85,000 taken from escrow by Wells Fargo should be classified as a "payment," such a classification would not entitle Plaintiff to interest credit under the loan agreement, and would not save him from default. He is not entitled to summary judgment under the deed of trust or promissory note.

## CONCLUSION

Wells Fargo has failed to establish that it is entitled to summary judgment on Plaintiff's breach of contract claim or on his breach of the covenant of good faith claim. Summary judgment is, however, entered against Plaintiff on his fraud and misrepresentation claim. Plaintiff is not entitled to summary judgment under the deed of trust or promissory note.

**IT IS THEREFORE ORDERED** that Wells Fargo Bank, N.A.'s Motion for Summary Judgment (Doc. 68) is **granted in part and denied in part.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment against Defendant Wells Fargo (Doc. 71) is **DENIED**.

DATED this 2nd day of April, 2012.

*A. Murray Snow*
G. Murray Snow
United States District Judge

- 13 -